**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bridgepoint Construction Services Incorporated, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>James Lassetter,<br><br>Defendant. | No. CV-16-00078-PHX-JJT<br><br>**ORDER** |

At issue are the Status Reports (Docs. 137, 139, 142) that Defendant filed in response to the Court's prior Order (Doc. 136).

On August 8, 2017, Defendant filed a Motion to Quash Plaintiff's Subpoena to Wells Fargo (Doc. 75), requesting that the Court block Plaintiff's attempt to obtain Wells Fargo Bank records pertaining to accounts owned by Vista Oceano La Mesa Venture LLC ("Vista Oceano")—the entity Plaintiff alleges was the owner and developer of the real estate project at the center of this lawsuit. Relatedly, on February 2, 2018, Defendant filed a Motion for Protective Order (Doc. 124), requesting that the Court prohibit Plaintiff from seeking the Wells Fargo and other discovery Defendant contended was duplicative, irrelevant, overbroad and overly burdensome.

In responding that the information he sought was relevant and discoverable, Plaintiff represented the following to the Court:

> In October 2010 Dilip Ram ([Plaintiff's] longtime real estate development partner who is not a party to this action) negotiated the purchase and a $9.45 million construction loan from Preferred Bank on

[real estate owned] beach view property in Santa Barbara California. Dilip Ram and [Plaintiff] needed to raise an additional $3 million from an investor to share in the profits on this real estate development opportunity. [Plaintiff] offered this opportunity to his cousin Martin Newton who then introduced [Defendant] to [Plaintiff] and Ram as an investor.

In March 2011 Newton, [Defendant], [Plaintiff] and Ram **agreed to be partners** and share in the profits of this project. **Dilip Ram signed Articles of Organization to form Vista Oceano La Mesa Venture LLC. [Exhibit 1]**

**In March 2011 [Plaintiff] opened a bank account at Wells Fargo bank for Vista Oceano La Mesa Venture LLC. [Plaintiff] was, and still is listed as the co-owner and co-signer on Vista Oceano La Mesa Venture LLC's bank account at Wells Fargo. [Exhibit 2]**

(Doc. 128 at 2 (emphasis added).)

In reply, Defendant pointed out that Plaintiff's Exhibit 1—a March 2011 document signed by Ram—was not the authentic Articles of Organization for Vista Oceano, but rather Newton had signed and filed the Vista Oceano Articles of Organization with the State of California in October 2010. (Doc. 131 at 2-3.) Defendant also noted that Plaintiff's Exhibit 2—a Wells Fargo account application for Vista Oceano—was not stamped as received by Wells Fargo and was redacted to hide the signatures of Plaintiff and Newton, so its authenticity was unclear. (Doc. 131 at 3-4.)

About a month later, in response to a separate motion, Plaintiff recited the same facts but, with regard to Exhibit 1, added a footnote stating that "Ram forgot that in October 2010 when he first thought they had a deal, Dilip Ram had his attorney Rubin Turner prepare Articles of Organization for Martin Newton's signature." (Doc. 134 at 3 n.1.)

On March 30, 2018, the Court granted Defendant's Motion to Quash Plaintiff's Subpoena to Wells Fargo and denied as moot Defendant's Motion for Protective Order.[1]

---

[1] In so doing, the Court noted that Plaintiff improperly reviewed documents delivered in error by Wells Fargo to Plaintiff while another motion to quash was still pending, which motion the California state court ultimately granted. To make matters worse, Plaintiff used information from the errantly delivered documents to subpoena

(Doc. 136 at 16-22.) Moreover, concerned that Plaintiff made misrepresentations and submitted inauthentic documents to the Court in support of his arguments, the Court stayed all proceedings in this matter and ordered Defendant to subpoena the State of California and Wells Fargo to procure the authentic versions of the documents Plaintiff had submitted to the Court as Exhibits 1 and 2.

Defendant has now satisfied the Court's requests and submitted the authentic documents (Docs. 137, 139, 142) provided by the State of California and Wells Fargo, and the Court will now address the accuracy of Plaintiff's representations.

### 1. The Articles of Organization for Vista Oceano

Plaintiff submitted Exhibit 1—March 2011 Articles of Organization for Vista Oceano—to the Court as evidence material to the question of whether and to what extent Plaintiff, Ram, Defendant and Newton cooperated to form Vista Oceano. In the Second Amended Complaint[2], Plaintiff alleges that, while Defendant and Newton were the only members and/or managers of Vista Oceano at any given time, as indicated by the entity's Operating Agreements (*e.g.*, Doc. 65-7 at 16-36), all four individuals "formed" Vista Oceano, Plaintiff and Ram had "full access to the books and records of Vista Oceano," and all four individuals "held themselves out as partners in the Santa Barbara project." (Doc. 60, SAC ¶¶ 19-21.)

To try to demonstrate collaboration between the four in forming Vista Oceano, Plaintiff explicitly represented to the Court that Ram, Plaintiff's "longtime real estate development partner," "signed Articles of Organization to form Vista Oceano," attaching Exhibit 1 in support. (Doc. 128 at 2; Ex. 1.) This was a patent misrepresentation, as demonstrated by the document produced by the State of California showing Newton signed Articles of Organization to form Vista Oceano. (*See* Doc. 139.) Indeed, all of the documents with any legal effect before the Court show that Newton was the organizer of

---

records in this matter. Because of this, the Court quashed that portion of Plaintiff's subpoena.

[2] The Second Amended Complaint (Doc. 60) is the operative pleading, with the exceptions noted in the Court's March 30, 2018 Order (Doc. 136).

Vista Oceano and that only Defendant and Newton were members and/or managers of Vista Oceano.

After Defendant raised this issue in his Reply (Doc. 131), Plaintiff explained in a footnote to a subsequent brief that Ram "forgot" that Newton had already formed Vista Oceano in October 2010 (Doc. 134), meaning the document Ram purportedly signed in March 2011 had no legal effect.[3] Whether or not Ram "forgot" in 2011 that Newton had already formed Vista Oceano in 2010 is of no moment to the question before the Court. Plaintiff knew—or certainly should have known—when he filed a brief with this Court in 2018 that the Articles of Organization document he attached was not authentic, but he not only submitted it to the Court but represented that it meant something that Plaintiff must have known was untrue, namely, that Ram was the organizer of Vista Oceano. This was material to the question Plaintiff put before the Court: whether Plaintiff and Ram were part of a partnership with Newton and Defendant to form Vista Oceano such that Plaintiff should be allowed access to the Vista Oceano account information at Wells Fargo.

**2.  Wells Fargo Bank Account Information for Vista Oceano**

Plaintiff also provided Exhibit 2 (Doc. 128-2) to the Court, a Wells Fargo Business Account Application for Vista Oceano, arguing it was further evidence of collaboration between the four individuals to form Vista Oceano. Indeed, in his opposition to Defendant's Motion for Protective Order, Plaintiff argued that Defendant improperly "filed a motion to quash [Plaintiff's] subpoena served on Wells Fargo bank even though [Plaintiff] is listed as a co-owner and co-signatory on that account." (Doc. 128 at 7.) In his brief, Plaintiff stated that Exhibit 2 is a "March 2011" Wells Fargo Business Account Application listing Plaintiff as "co-owner" of Vista Oceano and that he

---

[3] In a "Response to Status Report," Plaintiff attached a number of documents that purport to show that Ram tried to submit Articles of Organization for Vista Oceano to the State of California in March 2011. (Doc. 140.) The documents are not attached to a Declaration or Affidavit, and Plaintiff thus provides no authentication or foundation for these documents. (Doc. 140-1.) Moreover, it is irrelevant to the issue before the Court, because Plaintiff must have known this failed Articles of Organization document had no legal effect when he submitted it to the Court, but represented the opposite when filing it.

1   "was, and still is listed as the co-owner and co-signer" on Vista Oceano's account at Wells Fargo. (Doc. 128 at 4).

In reply, Defendant challenged the authenticity of the Business Account Application that Plaintiff filed with the Court because (1) it is not stamped or otherwise marked as received by Wells Fargo, and (2) the signature lines are redacted, and there is no evidence that the Business Account Application was approved or agreed to by Newton—a proposition Defendant found "particularly troubling given [Plaintiff's] prior admissions that he has directed others to forge Martin Newton's signature on multiple occasions." (Doc. 131 at 3-4.)

First, the document Plaintiff himself provided as Exhibit 2 (Doc. 128-2) shows that the Application was dated June 15, 2013, not March 2011 as Plaintiff represented in his brief. A review of the documents Wells Fargo provided reveals that the bank did receive the Business Account Application for Account -3742, dated June 15, 2013, and gave it a bar code and identification number. (*See* Doc. 142.) The signature lines on the Application are not redacted, but Newton did not sign the Application.[4]

The Court cannot discern why Plaintiff would have chosen to redact the signature lines in the Application he submitted to the Court as Exhibit 2 when he did not redact, for example, his social security number and address or those of Newton. The troubling aspect of this redaction is that Plaintiff redacted both his and Newton's signature lines, when it appears from the document Wells Fargo produced that Newton never signed the Application. Newton's signature would have indicated his assent to Plaintiff's self-characterization as "co-owner" and to Plaintiff's access to the account. Without the signature, there is no such indication of assent by Newton.

The Court assumes that the Application provided by Wells Fargo is the authentic one. If Plaintiff has a version of the Application that is signed by Newton, he shall provide it to the Court along with an explanation regarding his choice to redact the

---

[4] While Newton's signature is marked "submit manually," all of the other documents Wells Fargo provided in which a signature is marked "submit manually" do contain the signature, unlike this Application.

- 5 -

signature lines before he submitted the Application to the Court. With the information before it, the Court is left to conclude that, by redacting Newton's signature line when Newton never signed the Application—in other words, by redacting a blank space—Plaintiff represented to the Court that Newton signed the Application when he did not. The redaction itself was a misrepresentation. This is again material to the questions before the Court of whether there was cooperation between the four individuals—here, Newton and Plaintiff specifically—in the operation of Vista Oceano and whether Plaintiff had proper authorization to access the Wells Fargo account.

Other documents Wells Fargo provided in response to Defendant's subpoena show that Newton deleted Plaintiff's authorization to sign for Vista Oceano Account -3742 on June 16, 2014, a year after it was set up. (*See* Doc. 142.) Thus, not only did Plaintiff misrepresent in his brief the date the account was set up—it was 2013, not 2011—but he also misrepresented that he is "still listed as the co-owner and co-signer" for the Vista Oceano account, when he must have known he is not.

For the most part, the Court ruled in Defendant's favor with regard to Defendant's Motion to Quash (Doc. 75) and Motion for Protective Order (Doc. 124), so the prejudice arising from Plaintiff's misrepresentations is reduced. However, particularly at a time such as this, when the Court is working under a heavy case load, the Court must be able to rely on the accuracy of the parties' representations and the authenticity of the parties' evidence. A party that engages in misrepresentations such as those identified above loses the trust of the Court, and indeed Plaintiff's misrepresentations threaten the integrity of this judicial proceeding. The Court may in its discretion enter sanctions against Plaintiff and/or counsel for Plaintiff, up to and including dismissal of this matter, under Federal Rule of Civil Procedure 11 and/or the Court's inherent authority. *See, e.g.*, *Fink v. Gomez*, 239 F.3d at 989 (9th Cir. 2001); *Coulter v. Baca*, 2014 WL 12589652 (C.D. Cal. May 23, 2014); *Coston-Moore v. Medina*, 2012 WL 1551735 (E.D. Cal. May 1, 2012).

Accordingly, the Court will require Plaintiff to show cause why he and/or counsel for Plaintiff should not be sanctioned under Rule 11 and/or the Court's inherent authority

for the misrepresentations identified in this Order. Defendant will have the opportunity to respond, and the parties' briefs shall also address what sanctions should be imposed in the event the Court determines sanctions are appropriate. This case remains stayed, and the Court will set a show cause hearing, if necessary, by separate Order.

**IT IS THEREFORE ORDERED** that, on or before May 25, 2018, Plaintiff shall file a brief not to exceed 12 pages demonstrating why Plaintiff and/or counsel for Plaintiff should not be sanctioned for misrepresenting material facts to the Court.

**IT IS FURTHER ORDERED** that, on or before June 11, 2018, Defendant shall file a response to Plaintiff's brief not to exceed 12 pages.

**IT IS FURTHER ORDERED** that, on or before June 18, 2018, Plaintiff may file a reply brief not to exceed 7 pages.

Dated this 11th day of May, 2018.

Honorable John J. Tuchi
United States District Judge